# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 11, 2002 Session

## P.E.K. v. J.M. and C.Y.M.

**A Direct Appeal from the Chancery Court for Wayne County**
**No. 10696      The Honorable Jim T. Hamilton, Judge**

---

### No. M2001-02190-COA-R3-CV - Filed August 15, 2002

---

This case, before this Court for the second time, involves an interstate battle between never-married parents over custody of a minor daughter.  The trial court found that under the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), the trial court had jurisdiction of the custody dispute and entered judgment awarding custody of the minor daughter to the Petitioner-Father.  Mother has appealed.  We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY KIRBY LILLARD, J., joined.

Scott C. Williams, Stephanie S. Maxwell, Columbia, For Appellants, J.M. and C.Y.M.

Paul A. Bates, William M. Harris, Lawrenceburg, For Appellee, P.E.K.

### OPINION

This case was originally before this Court on Tenn. R. App. P. 10, Application for Extraordinary Appeal by C.Y.M. (Mother) and her husband, J.M., from an order of the trial court granting petitioner, P.E.K. (Father), temporary emergency custody of the minor child.  Pertinent factual and background information necessary for an understanding of the present appeal is set out in the opinion, ***P.E.K. v. J.M.***, 52 S.W.3d 653 (Tenn. Ct. App. 2001), which we quote as follows:

> In 1991, C.Y.M. and her husband, J.M., separated but did not
> divorce.  They have three children.  Sometime later, Ms. M. began
> cohabiting with P.E.K.  In 1994, while Ms. M. lived with Mr. K., she
> gave birth to a daughter at Tinker Air Force Base in Oklahoma. The
> birth certificate showed the child's name as A.N.K.M., incorporating

the last names of both Mr. K. and Mr. M. Mr. M., the husband, was listed as the father. Sometime after the child was born, Ms. M., Mr. K. and the child moved to Alabama. Ms. M. and Mr. K. separated in Alabama in February 1997 and apparently the child stayed with her mother. In 1998, Mr. K. sought to establish paternity and to obtain custody of the child. On March 15, 1999, the Alabama trial court, after hearing oral testimony, found Mr. K. to be the child's father and awarded custody to him with visitation for the mother. Mr. K. immediately moved to Tennessee with the child.[1]

On January 28, 2000, the Alabama Court of Civil Appeals reversed the trial court, stating that Mr. K. did not have standing to establish his paternity of the child. It explained:

> We conclude that the boyfriend did not have standing to establish his paternity of the child. . . . It is undisputed that the child was born during the marriage of the mother and her husband, even though the record indicates that the child was conceived and born while the mother and the husband were separated. Therefore, the husband is the presumed father of the child. Ala. Code 1975, § 26-17-5(a)(1). Our supreme court has held that no one has standing to challenge a presumed father's paternity as long as the presumed father persists in claiming paternity of the child. Ex parte C.A.P., 683 So. 2d 1010 (Ala. 1996); Ex parte Presse, 554 So. 2d 406 (Ala. 1989). The husband is not a party to this action, and, also, there is no evidence as to whether he persists in or relinquishes his status as the presumed father.

> The judgment of the trial court is reversed and the cause is remanded for the trial court to dismiss the boyfriend's action.

*C.Y.M. v. P.E.K.*, No. 2981263, 2000 WL 112778 (Ala. Civ. App. Jan 28, 2000). On March 17, 2000, Mr. K.'s application for a rehearing was denied, and he filed a petition for a writ of certiorari with the Alabama Supreme Court.

---

[1]The record does not indicate that the Alabama court placed any restrictions on Mr. K.'s relocation, thus, we assume he did not violate any court orders by moving to Tennessee.

On June 1, 2000, Mr. K. filed a petition for temporary custody in Wayne County Juvenile Court, perhaps fearing that he would not prevail before the Alabama Supreme Court. In his petition he alleged that the child was "dependent and neglected," and he listed Ms. M.'s address as a post office box in Nashville, Tennessee.

On June 30, 2000, the Alabama Supreme Court denied Mr. K.'s petition for the writ of certiorari, stating:

> The petition for the writ of certiorari is denied. Our denial of the petition should not be taken as an approval of the reasoning stated in the Court of Civil Appeals' opinion.

*Ex parte P.E.K. (In re C.Y.M. v. P.E.K.)*, No. 1991276, 2000 WL 869611 (Ala. June 30, 2000).

On July 5, 2000, Ms. M. obtained custody of the child.[2] Two days later, the Wayne County Juvenile Court dismissed Mr. K.'s petition for temporary custody "due to the fact that said child's father already retained custody of said child in Alabama."

On July 18, 2000, Mr. K. filed a petition for temporary emergency custody in Wayne County Chancery Court. He alleged that he was the biological father of the child, that he had had continuous custody of her since March 1999, that the child had been taken to California, that Ms. M. had "threatened that the petitioner would never see [the child] again," and that "the actions of the respondent, C.Y.M., [have] caused the petitioner to fear for the safety of said minor child." He asked the court to find that he was "the fit and proper person to have the permanent care and custody of said minor child and [that] a reasonable amount of child support be set, both temporary and permanent." The same day, the chancery court awarded Mr. K. "temporary emergency custody" pending further orders of the court.

Also on July 18, 2000, the Alabama trial court entered its order formally dismissing Mr. K.'s petition for custody in that state.

---

[2]The record does not indicate the circumstances under which Ms. M. obtained custody, but we note that the original custody order, entered in March 1999, gave Ms. M. visitation during the month of July.

At some point Ms. M. seems to have reunited with her husband, J.M. On August 15, 2000, Mr. and Ms. M. together filed a *pro se* motion to dismiss in Wayne County Chancery Court. In their motion, they asked the court to dismiss Mr. K.'s petition for temporary emergency custody on "grounds that the court lacks jurisdiction of the subject matter of this controversy in that the minor child in question was not legally in the state." The motion recounted the Alabama proceedings, noting that, under Alabama law, Mr. M. was the presumed father and "no one has standing to challenge a presumed father's paternity as long as the presumed father persists in claiming paternity of the child." The motion, signed by both Mr. and Ms. M., concluded with the statement, "J.M. has not and will not disclaim the minor child, A.N.M. as his daughter." Mr. M.'s notarized affidavit, attached to the motion, stated, "A.N.M. was conceived and born during my marriage to my wife, C.M., and I do claim A. as my daughter. I have not and will not disclaim A. as my daughter." The M.s contested only subject matter jurisdiction, not personal jurisdiction, in their motion.

On August 31, 2000, Ms. M., through counsel, filed a "Response" in which she again denied that the court had subject matter jurisdiction. For the first time, Ms. M. denied that the court had personal jurisdiction over herself, her husband or the child. She also claimed that "Petitioner previously brought this cause, and has fully and fairly litigated this cause for over a year, in the courts of the state of Alabama; that the Alabama courts have determined and ruled against Petitioner; and that the determination and ruling of the Alabama courts are entitled to enforcement by this Honorable Court, resulting in the dismissal of the Petition."

On September 7, 2000, the Wayne County chancellor entered an order allowing Mr. K. to amend his petition to add an allegation, "That the defendant, J.M., has abandoned the said A.N.K.," and the prayer for relief, "That the Plaintiff be declared to be the legitimate and biological father of A.N.K."

On September 20, 2000, the M.s filed a petition for emergency custody in Chancery Court of Union County, Arkansas. They alleged that "the child is present in this state with her parents and her sisters and it is necessary to protect the health, safety and welfare of the child. In addition, the child may have been subjected

to mistreatment and abuse in her past[3] by Defendant, P.E.K., who represents himself to be the biological father, without any prior judicial finding of paternity." They further alleged that Mr. K. "recently obtained an Emergency Custody Order through the Chancery Court of Wayne County, Tennessee, which clearly has no jurisdiction over Plaintiffs or their minor daughter." They contended that Arkansas was a more convenient forum pursuant to T.C.A. § 9-19-207, and sought temporary emergency custody of the child. The Arkansas chancery court granted the M.s custody of the child the same day, "to protect the child's health, safety and welfare."

On September 28, 2000, the Wayne County Chancery Court entered an order denying the M.'s motion to dismiss and setting trial for October 27, 2000. On October 10, 2000, Ms. M. filed motions in the trial court requesting permission to file a Tenn. R. App. P. 9 interlocutory appeal with this court and for a stay in the proceedings pending appeal. The trial court denied those motions on November 1, 2000, and reset trial for November 17, 2000.

Ms. M. then filed a Tenn. R. App. P. 10 application for an extraordinary appeal with this court on November 3, 2000. This court then ordered Mr. K. to file an answer to the application, which he did. On November 16, 2000, this court issued a stay of the proceedings set for November 17, 2000, pending resolution of the application.

On November 21, 2000, this court granted the application for an extraordinary appeal, noting that the application raised serious issues concerning the trial court's jurisdiction. The appeal was limited to the following two issues:

1) The jurisdiction of the Chancery Court for Wayne County to establish paternity and/or to make an award of permanent custody; and

---

[3]The petition was accompanied by a letter from a psychologist who had spoken to the child twice. The psychologist noted some problems that had been reported in the child's relationship with Mr. K. and offered the opinion that the child should "remain where she is until she can be better evaluated in therapy. Also she has moved between many different households and the disruption of routine and relationships [is] very detrimental to a young child. Also A. has reported a very close relationship with her sisters and moving away would be detrimental to these relationships." The psychologist also noted that she preferred to have six to ten sessions with a child before making a statement, but that time had not permitted additional sessions.

2) The validity of the July 18, 2000 Order for Temporary Emergency Custody.

*Id.* at 653 - 57.

After reviewing the record, issues, and applicable law, the opinion continues:

We hold that the Chancery Court of Wayne County has general subject matter jurisdiction over paternity and child custody matters and that the court has personal jurisdiction over the M.s. What we cannot resolve on the basis of the record before us is the question of whether the court has jurisdiction to decide the custody question in this case. The UCCJEA makes the child's home state the preferred forum to decide custody matters. *See* Tenn. Code Ann. § 36-6-216(a). If this state is not the home state, jurisdiction to decide custody is limited to situations where (1) there is no home state, (2) the home state has declined to exercise jurisdiction, Tenn. Code Ann. § 36-6-216(a)(2) and (3), or (3) this state has continuing jurisdiction under Tenn. Code Ann. § 36-6-217(a)(1)(2). The question of the appropriate forum to decide the custody of this child must be resolved in the chancery court.

As to the paternity question, we have decided only that the chancery court has the power to decide such questions. ***The M.s are free to raise any defense to that action except the lack of personal jurisdiction.*** The temporary emergency custody order is reversed and the cause is remanded to the Chancery Court of Wayne County for further proceedings.

*Id.* at 660-61 (emphasis added).

On remand, the trial court held a hearing on August 6, 2001. Mother and her daughter failed to attend, in spite of a court order directing them to attend. Mother's attorney was present, however, and the court heard testimony from P.E.K., his mother, the child's kindergarten teacher, and several of P.E.K.'s friends. Additionally, the trial court admitted, among other things, DNA evidence of P.E.K.'s paternity[4], and Mother's Tennessee driver's license and business card.

P.E.K. testified that the child lived with him in Tennessee for 16 months following the entry of the Alabama custody order. He also testified that Mother moved from Alabama to Nashville in

---

[4]The DNA report indicated that the likelihood that Mr. K is P.E.K.'s father was 227 to 1, and that the probability of his paternity was 99.6 percent.

the fall of 1999, and that she continued to reside in Nashville until she took their daughter to California, and ultimately Arkansas, in July of 2000. P.E.K. explained that Mother was in the business of selling hard-hat covers, and that her address and phone number listed on her business card were in Nashville.

On cross-examination, counsel for Mother asked P.E.K. whether he was aware that the reason she had moved to Tennessee "was so that it would be closer for her to have her visits with [her daughter]." P.E.K. responded that, "anybody can tell you it's 60 miles to Athens [Alabama] and it's 120 to Nashville, so you figure that out for yourself." In addition to testifying about P.E.K.'s parenting abilities, both the child's kindergarten teacher and P.E.K.'s mother testified that Mother had informed them that she had moved from Athens, Alabama to Nashville, Tennessee.

Before ruling, the chancellor asked counsel for Mother whether the minor child's paternity was in dispute. In response, Mother's attorney replied, "Well, Judge, I would refer you and Mr. Bates to the petition that's pending in Arkansas. When you look at that, [Mother] in Arkansas is claiming that P.E.K. is the father. She's seeking support from him, so . . . the answer to your question would be no. . . "

On August 7, 2001, after the nonjury trial on August 6, 2001, the trial court entered its order, which provides:

> 1. Uncontroverted testimony presented at the aforesaid hearing provides clear and convincing evidence that from October, 1999 until July, 2000, the Respondent, [Mother], was a resident of the State of Tennessee. The Court further finds that Respondent and minor child's living in Arkansas while a custody proceeding is pending in the State of Tennessee does not establish her residency, nor the minor child's residency in the State of Arkansas. The Court further finds that the Tennessee custody proceeding was filed and pending prior to any court proceedings in the State of Arkansas. Accordingly, the Court finds that Tennessee is the home state of the child, and Tennessee is the proper forum to decide paternity and permanent custody of the child;
>
> 2. Statements by counsel for the Respondent, along with DNA evidence presented at the hearing by the Petitioner provide clear and convincing evidence that the Petitioner, [P.E.K.], is the biological father of the minor child;
>
> 3. Even though this Court issued an Order requiring Respondent and the minor child to be present at this hearing, Respondent failed to appear in compliance with said Order, and accordingly, Petitioner's oral motion to strike the affidavit of Respondent from the record of this matter is well taken;

4. Evidence presented through the testimony of witnesses, as well as the testimony of the Petitioner, provide clear and convincing evidence that the Petitioner is a fit and proper person to have custody of the minor child.

It is, therefore, ORDERED, ADJUDGED and DECREED that:

1. The Court finds that Tennessee is the home state of the minor child, . . . for the purposes of establishing paternity and custody;

2. Respondent's Motion To Dismiss is not well taken, and, accordingly is denied;

3. The Petitioner, [P.E.K.], is the biological father of the aforesaid minor child;

4. the Petitioner, [P.E.K.], is a fit and proper person to have custody and care of the aforesaid minor child;

5. The minor child is to be returned immediately into the care and custody of the Petitioner, [P.E.K.];

6. Petitioner's Motion To Strike Respondent's affidavit previously filed with the Court is well taken, and hereby granted;

7. All matters pertaining to visitation and child support are reserved pending further orders of this Court;

8. The costs of this matter is assessed to the Respondents for which execution may follow.

Mother and her husband, J.M., appeal and present five issues for review:

1. Whether the trial court erred in holding that the Tennessee was the home state of the minor child and in exercising subject matter jurisdiction over the custody question.

2. Whether the trial court erred in denying the mother's motion to dismiss.

3. Whether the trial court erred in holding that the biological father is a fit and proper person to have custody of the minor child.

4. Whether the trial court erred in ruling that P.E.K. is the biological father of the minor child.

5. Whether the trial court erred in allowing P.E.K. to call witnesses whose names were not furnished to counsel or the respondent prior to trial.

We will first consider the fourth issue: Whether the trial court erred in ruling that P.E.K. is the biological father of the minor child. The record reflects that in addition to P.E.K.'s testimony of his relationship with Mother, the DNA report introduced into evidence found that P.E.K. is not excluded as the biological father of the minor child. The report states: "The likelihood that he is the biological father is 227 to 1 when compared to a random individual in the North American Caucasian population. The probability of paternity is 99.6 %."

Moreover, the record reflects that Mother's counsel, in effect, stipulated that P.E.K. is the biological father of the child. Concerning the question of paternity, we quote from the record:

> THE COURT: . . . Do you-all have anything else?
>
> MR. BATES [P.E.K.'s counsel]: Yes, sir. I wanted to – we do have a representative here from the DNA testing facility. As I understand it, paternity is not disputed, the biological paternity of [the minor child]. Is that right or wrong, Ms. Hales?
>
> MS. HALES [Mother.'s counsel]: Well, Judge, I would refer you and Mr. Bates to the petition that's pending in Arkansas. When you look at that, [Mother] in Arkansas is claiming that [P.E.K.] is the father.
>
> She's seeking support from him, so I think the question – the answer to your question would be no, but that it needs to be decided by the court in Arkansas. . . .

The open court concession by the attorneys in a case constitutes a binding stipulation. *Bearman v. Camatsos*, 215 Tenn. 231, 385 S.W.2d 91 (1964); *Tamco Supply v. Pollard*, 37 S.W.3d 905 (Tenn. Ct. App. 2000). On the state of the record, the trial court did not err in finding that P.E.K. is the biological father of the minor child.

We will consider issues one and two together as to the trial court's finding that the court had subject matter jurisdiction over the custody question. These issues are controlled by the provisions of T.C.A. § 36-6-216 (2001) which states:

§ 36-6-216. **Initial custody determination; jurisdiction**

-9-

(a) Except as otherwise provided in § 36-6-219, a court of this state has jurisdiction to make an initial child custody determination only if:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under§ 36-6-221 or § 36-6-222, and:

(A) The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under subdivision (a)(1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 36-6-221 or § 36-6-222; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (2), or (3).

(b) Subsection (a) is the exclusive jurisdictional basis for making a child-custody determination by a court of this state.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

The record reflects that after obtaining custody of the child in the Alabama trial court, P.E.K. moved to Waynesboro, Tennessee with the child in March 1999, where they resided together until Mother took the child on July 5, 2000 for visitation. The Alabama Court of Appeals reversed the trial court's award of custody to P.E.K., and the Alabama Supreme Court denied certiorari on June 30, 2000. Thus, during the entire time that the minor child resided in Tennessee with P.E.K., there was a custody controversy in progress. P.E.K. had custody of the child only by virtue of the

Alabama trial court decision, which was subsequently reversed. The child was with P.E.K. by virtue of the decision, and upon its reversal, his authority to have the child in Tennessee was vacated.

The period of time during which a child has resided in this state pending resolution of a custody dispute may not be considered in reckoning the time necessary to establish home state jurisdiction. *Boyd v. Boyd*, 653 S.W.2d 732, 738 (Tenn. Ct. App. 1983); *Sherrill v. Sherrill*, No. 01-A-01-9703-CH00131, 1998 WL 57528, (Tenn. Ct. App. 1998). Therefore, the six-month residency requirement to find Tennessee as the home state provided for in T.C.A. § 36-6-216 (2001) has not been met. By the same token, we note that the child moved with her mother to the State of Arkansas some time after July of 2000, after a visitation period in California. The petition for emergency custody was filed in the chancery court in Arkansas on September 20, 2000, and at that time neither the Arkansas statute nor the Tennessee statute established Arkansas the home state of the child.[5] Thus, under the provisions of T.C.A. § 36-6-216 (a)(1) (2001), neither Arkansas nor Tennessee as the "home state" obtained jurisdiction of the controversy. Accordingly, the trial court erred in finding Tennessee to be the child's home state.

In this case, there is no "home state" for the child pursuant to the statute. However, a court of this state may assume jurisdiction if the child, or one of the parents, has a significant connection with the state other than a mere physical presence, and there is substantial evidence available in the state concerning the child's care, protection, training, and personal relationship. *See* T.C.A. § 36-6-216 (a)(2) (2001). With this criterion, the trial court must find either that the Arkansas court has no jurisdiction as the home state, nor jurisdiction by virtue of significant connections, or having jurisdiction, has declined to exercise that jurisdiction. *See* T.C.A. § 36-6-216 (a)(3)(4) (2001). The trial court found Tennessee was the home state of the child at the time the proceeding in Tennessee was commenced and implicitly found Arkansas was not the "home state." There is no finding concerning the other provision of T.C.A. § 36-6-216, since Arkansas is also asserting jurisdiction over this case.

---

[5] We note that, pursuant to the provisions of T.C.A. § 36-6-213, the Tennessee and Arkansas courts properly communicated regarding this case.

We should also note that the trial court, in awarding custody to P.E.K., failed to comply with the provisions of T.C.A. § 36-6-106 (2001), which requires that any custody determination "shall be made upon the basis of the best interest of the child." That statute provides:

### § 36-6-106. Child custody

(a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39-15-402], or child sexual abuse, [as defined in

§ 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

(b) Notwithstanding the provisions of any law to the contrary, the court has jurisdiction to make an initial custody determination regarding a minor child or may modify a prior order of child custody upon finding that the custodial parent has been convicted of or found civilly liable for the intentional and wrongful death of the child's other parent or legal guardian.

*Id.* The trial court made no finding as to the best interest of the child in the instant case.

Accordingly, the order of the trial court finding P.E.K. to be the biological father of the minor child is affirmed. The order in all other respects is reversed, and the case is remanded to the trial court for further proceedings consistent with this Opinion. Costs of the appeal are assessed one-half against appellants, C.Y.M. and J.M., and their surety, and one-half to appellee, P.E.K.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.