IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 25, 2008 Session

## DEVONNA TAYLOR
v.
## BRANDICUS McKINNIE

Appeal from the Juvenile Court for Gibson County
No. 8292     Robert W. Newell, Judge

No. W2007-01468-COA-R3-JV - Filed August 5, 2008

This appeal involves modification of a parent's status as primary residential parent. The mother and the father never married, and the mother was the children's primary residential parent. The father filed a petition to modify, requesting to be named the primary residential parent. As a material change in circumstances, he alleged that the children had been living primarily with him for the past several months. After a hearing, the juvenile court established the father as the primary residential parent, gave the mother alternate parenting time, and set child support payments for the mother. The mother appeals, arguing that she never received proper notice of the father's petition to modify, that there had been no material change in circumstances, and that the evidence did not support a finding that designating the father as the primary residential parent was in the children's best interest. We affirm, finding that the mother waived her challenge to the sufficiency of service of process, and that the evidence supports the designation of the father as the primary residential parent.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Jennifer Twyman King, Jackson, Tennessee, for Appellant Devonna Taylor

David Wayne Camp and Michael Brandon Barber, Jackson, Tennessee, for Appellee Brandicus McKinnie

### OPINION

Petitioner/Appellee Brandicus McKinnie ("Father") and Respondent/Appellant Devonna Taylor ("Mother") had two children together but were never married. Their first child was born on August 19, 2002, and their second child was born on December 9, 2003.

The record before this Court does not include the original order designating the children's primary residential parent. From the record, however, it appears undisputed that Mother was originally established as the primary residential parent.[1]

In February 2007, Father filed a petition in the Gibson County (Trenton) Juvenile Court, seeking to be designated as the children's primary residential parent. In the petition, Father asserted that there had been a "substantial and material change in circumstances, to wit that the minor children have been living primarily with [Father] for several months." The copy of Father's petition in the appellate record does not include a certificate of service. The record also contains no responsive pleadings from Mother.

A hearing on Father's petition was held on June 12, 2007. Mother appeared at the hearing without counsel. At the outset of the hearing, the Juvenile Court Judge asked Mother if she desired an attorney; she declined. The hearing then proceeded with Mother representing herself. Mother did not object or state that she was not given notice of Father's petition.[2]

Father was the first witness. He testified that he lives in Whiteville, Tennessee, and that he is employed full time with a group home for the mentally challenged. At the time of the hearing, Father's work shift began at 8:00 a.m and ended at 4:00 p.m., Monday through Friday.[3] Father was under an order to pay child support, and stated that he was current with his obligation.

Father then testified about the children. He asserted that, since June 2006, he had been the children's primary caretaker. He said that he used a calendar to keep track of the time he spent with his children,[4] and claimed that between June 2006 and December 2006, the children had stayed with him for 135 days. While he was at work, he said, his mother babysat the children. Father said he had no other children living with him.

Father proffered the testimony of several witnesses. The pastor of his church testified that Father regularly attends services on Sunday and Tuesday and has his children with him most of the time. Another member of Father's church corroborated the pastor's testimony. A co-worker of Father, who has a daughter similar in age to Father's daughters, testified that he often saw Father with the parties' daughters and that their children played together regularly. All of Father's witnesses testified that Father appeared to have a loving relationship with the parties' children, and that the children appeared to be well cared-for.

_____

[1]The record contains a petition filed by Mother on May 26, 2005 with the Gibson County Juvenile Court, in which she states that she is the custodian of the parties' two children, and asks the trial court to determine Father's child support obligation.

[2]At one point during her testimony, Mother indicated that she had not received any "letter," only telephone calls and text messages from Father "about him taking my kids." She did not, however, assert that she had not gotten notice of Father's petition, or indicate that any lack of notice left her unprepared or unable to proceed.

[3]Father stated that he had previously worked a twelve-hour shift from 8:00 a.m. to 8:00 p.m.

[4]The calendar itself is not a part of the record.

Mother testified next. She said that she no longer lives in Gibson County, and that she had lived in Jackson, Madison County, Tennessee since 2005. In response to questions from the court, Mother disputed Father's assertion that the parties' daughters had been staying with him most of the time. Mother maintained that, over the prior six months, the children had been with her seventy-five percent of the time. In addition to the parties' daughters, Mother testified that her three other children, ages 13, 12, and 7, lived with her as well.

After Mother testified, her mother, Gloria Croom ("Grandmother"), provided testimony. Grandmother said that she lives in Atwood, Tennessee.[5] Despite the fact that she lived in another county, Grandmother testified that she babysat all five of Mother's children while Mother was at work. Grandmother maintained that Mother, not Father, had physical custody most of the time. Grandmother could not recall how many days in June of 2006 she took care of the children, but asserted that she "kept them almost the whole month of July [2006]."

At the close of the proof, the Juvenile Court read its ruling. It stated:

> The Court finds, upon testimony in court and evidence presented, that circumstances exist that the Court orders that custody or primary caregiver of the children . . . be given to the father, Brandicus McKinnie. The Court orders child support to be terminated. . . . I'm going to ask that a visitation plan be presented to the Court. It will be a liberal visitation plan.

In its subsequent written order, the Juvenile Court found a material change in circumstances and determined that it was "in the best interest and welfare of the minor children to award custody to the father." After the hearing, a permanent parenting plan was entered, in which Father was designated as the primary residential parent. He was awarded parenting time for 261 days per year, and Mother was awarded parenting time for 104 days. Mother was also ordered to pay $241 per month in child support to Father.[6] Mother now appeals.

On appeal, Mother raises several issues. She asserts first that she did not receive proper notice of Father's petition for modification. She argues next that the Juvenile Court erred in finding a material change in circumstances sufficient to justify a modification of primary residential parent status. Aside from a change in circumstances, Mother contends that the Juvenile Court erred in failing to conduct a comparative fitness analysis, and that the evidence overall does not support a modification to designate Father as the primary residential parent.

We review the trial court's findings of fact *de novo* on the record, presuming those findings to be correct "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). We review its legal conclusions *de novo* with no presumption of correctness. *Campbell*, 919 S.W.2d at 35. In addition, we note that

---

[5]Atwood is in Carroll County, Tennessee.

[6]At the hearing, the Gibson County Juvenile Court stated its intent to transfer the case to Hardeman County, Tennessee, Father's residence, since neither party was living in Gibson County. The appellate record contains no indication of such a transfer.

"the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge." ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

First, we address Mother's assertion that she was not served with notice of Father's petition for modification of custody. A defendant waives her objection to service of process by making a general appearance before the court in which the suit is pending, without objecting to the adequacy of the service of process. ***In re Grosfelt***, 718 S.W.2d 670, 672 (Tenn. Ct. App. 1986); ***see also Dixie Sav. Stores, Inc. v. Turner***, 767 S.W.2d 408, 410 (Tenn. Ct. App. 1988) ("[I]f a party makes a general appearance and does not take issue with venue, adequacy of service of process, personal jurisdiction, or other similar matters, the courts customarily find that the party has waived its objections to these matters.") (citations omitted). We will find the defendant to have made a general appearance "unless the contrary appears." ***P.E.K. v. J.M.***, 52 S.W.3d 653, 660 (Tenn. Ct. App. 2001) "Waiver occurs only if there is no objection to personal jurisdiction in the first filing, either a Rule 12 motion or an answer." ***Landers v. Jones***, 872 S.W.2d 674, 676 (Tenn. 1994).

In this case, Mother filed no pleadings in response to Father's petition, but, nonetheless, appeared at the hearing on Father's petition. Mother represented herself, testified before the court, and brought a witness to testify. She did not challenge the adequacy of service of process, venue, or the exercise of jurisdiction by the Gibson County Juvenile Court. While she stated at one point in her testimony that she never received a "letter" from Father, Mother made no statement that could reasonably be interpreted as an objection or assertion that she did not receive notice of Father's petition or of the hearing. Under these circumstances, we must conclude that Mother waived any objection to the adequacy of service of Father's petition.

We next address Mother's argument that there was insufficient evidence of changed circumstances to justify modification of her status as the primary residential parent. Under Tennessee statutes, a parent seeking to modify the primary residence of a minor child must "prove by a preponderance of the evidence a material change in circumstance." T.C.A. § 36-6-101(a)(2)(B) (2005 & Supp.2007). This statute was applied by our Supreme Court in ***Kendrick v. Shoemake***, 90 S.W.3d 566, 570 (Tenn. 2002). The ***Kendrick*** Court stated that once a valid order designating the primary residential parent has been issued, if the other parent seeks to change that designation, the threshold issue is whether a "material change in circumstances has occurred after the initial custody determination." ***Id.*** (citing ***Blair v. Badenhope***, 77 S.W.3d 137, 150 (Tenn. 2002)). The Court may look to the following factors to determine that a child's circumstances have changed sufficiently to warrant modification of the primary residence of the child: (1) whether the change occurred after entry of the order to be modified; (2) whether the change was known or "reasonably anticipated" when the previous order was entered; and (3) whether the change "affects the child's well-being in a meaningful way." ***Id.*** (quoting ***Blair***, 77 S.W.3d at 150). Under the applicable statute, "[a] material change of circumstances does not require a showing of a substantial risk of harm to the child." T.C.A. § 36-6-101(a)(2)(B). It may include, however, "failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child." ***Id.***

Under ***Kendrick***, if, and only if, the court finds such a material change in circumstances, then the court must determine "whether the modification is in the child's best interests." ***Kendrick***, 90

S.W.3d at 570. This determination is made within the framework set forth in Tennessee Code Annotated § 36-6-106.[7] *Id.* The order on Father's petition to modify the designation of primary residential parent does not include specific factual findings from which we can determine the basis for the Juvenile Court's decision. Thus, we must review the record *de novo* with no presumption of the correctness of the Juvenile Court's factual findings. ***Goodman v. Memphis Park Comm'n***, 851 S.W.2d 165, 166 (Tenn. Ct. App. 1992) (citation omitted).

Although the record before this Court does not include an original order designating the primary residential parent, Father does not appear to dispute that, heretofore, Mother has been the primary residential parent for both of the parties' children. Thus, we look first at whether the evidence in the record supports the trial court's finding that a material change in circumstances occurred. The changed circumstance alleged by Father is that, for six months prior to his petition, the parties' children spent most of their time in his care.

Mother argues that the evidence in the record does not preponderate in favor of a finding of changed circumstances, pointing to her own testimony and that of her mother, and contending that her evidence outweighed the evidence submitted by Father. The Juvenile Court was faced with contradictory witness testimony on the issue of how much time the children spent with each parent. Father and his witnesses testified that the children spent the majority of their time in Father's care, and Mother and her witness testified that the children spent most of their time with her. The trial court apparently made an implicit credibility determination in favor of Father, crediting his testimony that the parties' daughters had been spending most of their time with him. "[B]ecause there is no requirement that a trial court make express findings of fact regarding a witness's

---

[7]Section 36-6-106 states:

(a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. The court shall consider all relevant factors, including the following, where applicable:
> (1) The love, affection and emotional ties existing between the parents or caregivers and the child;
> (2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .
> (4) The stability of the family unit of the parents or caregivers;
> (5) The mental and physical health of the parents or caregivers;
> (6) The home, school and community record of the child;
> . . .
> (10) Each parent or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

T.C.A. § 36-6-106(a) (2005 & Supp. 2007).

credibility, the absence of such findings does not alter the applicable standard of review." ***Richards v. Liberty Mut. Ins. Co.***, 70 S.W.3d 729, 733 (Tenn. 2002). We give "considerable deference" to a trial court's determinations with regard to witness credibility. ***Id.*** Giving appropriate deference to the trial court's credibility determinations, the evidence in the record supports a finding that the children spent more time with Father than with Mother.

Assuming, then, that the children were spending the majority of their time in Father's care, this would be contrary to the original designation of Mother as the primary residential parent. The change occurred after the original order, and there was no evidence that this was "reasonably anticipated" at the time the original order was entered. Such a change would also affect the children's well-being "in a meaningful way." ***Kendrick***, 90 S.W.3d at 570. Thus, the evidence supports the trial court's finding of a material change in circumstances.

Finally, Mother contends that the Juvenile Court erred by not performing a comparative fitness analysis, and that the evidence as a whole did not support its designation of Father as the primary residential parent. Had a comparative fitness analysis been performed, she maintains, the evidence would preponderate against naming Father the primary residential parent.

In the Juvenile Court below, the order designating Father as the children's primary residential parent does not include specific findings on the comparative fitness of either Mother or Father. The order concludes that designating Father as the primary residential parent is in the children's best interest, but does not elaborate on the basis for this conclusion.

As stated above, in a modification proceeding, if the trial court finds a material change in circumstance, it must then determine whether modifying the primary residence is in the children's best interest. ***Kendrick***, 90 S.W.3d at 570. The factors to be considered in a "best interest" analysis are set forth in Tennessee Code Annotated § 36-6-106. ***Id.*** In a proceeding to modify the designation of primary residential parent, however, the trial court "need not repeat the comparative fitness analysis that is appropriate at the time of the original custody decree." ***Musselman v. Acuff***, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991), *overruled on other grounds as recognized by* ***Kesterson v. Varner***, 172 S.W.3d 556, 560-65 (Tenn. Ct. App. 2005).

Because the Juvenile Court order did not include specific factual findings supporting its conclusion on the children's best interest, we review the record *de novo* with no presumption of correctness. ***Goodman***, 851 S.W.2d at 166.

At the hearing, the testimony presented by Father showed that, for a six-month period prior to the hearing, Father was the children's primary caregiver. Father provided substantial testimony about his employment, including his schedule and the nature of his work. Father's witnesses described the time he spent with the parties' daughters and his loving relationship with them. Mother disputed only Father's assertion that the children spent most of their time with him. In contrast, while it is clear that the children love both parents, at the hearing, Mother submitted virtually no evidence regarding her parenting, her time with the children, or her current or past employment status. From our review of the record, we find that the evidence preponderates in favor

of the Juvenile Court's finding that designating Father as the primary residential parent is in the children's best interest.

The decision of the trial court is affirmed. Costs of this appeal are taxed to the Appellant, Devonna Taylor, and her surety, for which execution may issue if necessary.


_____
HOLLY M. KIRBY, JUDGE