IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 2, 2001 Session

## P.E.K. v. J.M. AND C.Y.M.

**Extraordinary Appeal from the Chancery Court for Wayne County**
**No. 10696     Jim T. Hamilton, Chancellor**

_____

**No. M2000-02737-COA-R10-CV - Filed April 11, 2001**

_____

This case involves an interstate battle between never-married parties over the custody of a six year old child. This court granted an interlocutory appeal so that we could determine whether the Wayne County Chancery Court has jurisdiction over the paternity and custody of this child and whether the temporary emergency custody order is valid. We hold that the Wayne County court has subject matter jurisdiction over paternity and custody matters, but that the temporary emergency custody order was invalid because the child was not present in this state and the facts alleged were insufficient to obtain such an order. We remand for a hearing on paternity and custody.

**Tenn. R. App. P. 10  Appeal by Permission; Judgment of the Chancery Court
Reversed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and PATRICIA J. COTTRELL, JJ., joined.

Ronald T. Landers, Columbia, Tennessee, for the appellant, C.Y.M.

Paul A. Bates and William M. Harris, Lawrenceburg, Tennessee, for the appellee, P.E.K.

## OPINION

### I.

In 1991, C.Y.M. and her husband, J.M., separated but did not divorce. They have three children. Sometime later, Ms. M. began cohabiting with P.E.K. In 1994, while Ms. M. lived with Mr. K., she gave birth to a daughter at Tinker Air Force Base in Oklahoma. The birth certificate showed the child's name as A.N.K.M., incorporating the last names of both Mr. K. and Mr. M. Mr. M., the husband, was listed as the father. Sometime after the child was born, Ms. M., Mr. K. and the child moved to Alabama. Ms. M. and Mr. K. separated in Alabama in February 1997 and apparently the child stayed with her mother. In 1998, Mr. K. sought to establish paternity and to

obtain custody of the child. On March 15, 1999, the Alabama trial court, after hearing oral testimony, found Mr. K. to be the child's father and awarded custody to him with visitation for the mother. Mr. K. immediately moved to Tennessee with the child.[1]

On January 28, 2000, the Alabama Court of Civil Appeals reversed the trial court, stating that Mr. K. did not have standing to establish his paternity of the child. It explained:

> We conclude that the boyfriend did not have standing to establish his paternity of the child. . . . It is undisputed that the child was born during the marriage of the mother and her husband, even though the record indicates that the child was conceived and born while the mother and the husband were separated. Therefore, the husband is the presumed father of the child. Ala. Code 1975, § 26-17-5(a)(1). Our supreme court has held that no one has standing to challenge a presumed father's paternity as long as the presumed father persists in claiming paternity of the child. Ex parte C.A.P., 683 So. 2d 1010 (Ala. 1996); Ex parte Presse, 554 So. 2d 406 (Ala. 1989). The husband is not a party to this action, and, also, there is no evidence as to whether he persists in or relinquishes his status as the presumed father.

> The judgment of the trial court is reversed and the cause is remanded for the trial court to dismiss the boyfriend's action.

C.Y.M. v. P.E.K., No. 2981263, 2000 WL 112778 (Ala. Civ. App. Jan 28, 2000). On March 17, 2000, Mr. K.'s application for a rehearing was denied, and he filed a petition for a writ of certiorari with the Alabama Supreme Court.

On June 1, 2000, Mr. K. filed a petition for temporary custody in Wayne County Juvenile Court, perhaps fearing that he would not prevail before the Alabama Supreme Court. In his petition he alleged that the child was "dependent and neglected," and he listed Ms. M.'s address as a post office box in Nashville, Tennessee.

On June 30, 2000, the Alabama Supreme Court denied Mr. K.'s petition for the writ of certiorari, stating:

> The petition for the writ of certiorari is denied. Our denial of the petition should not be taken as an approval of the reasoning stated in the Court of Civil Appeals' opinion.

Ex parte P.E.K. (In re C.Y.M. v. P.E.K.), No. 1991276, 2000 WL 869611 (Ala. June 30, 2000).

---

[1] The record does not indicate that the Alabama court placed any restrictions on Mr. K.'s relocation, thus, we assume he did not violate any court orders by moving to Tennessee.

On July 5, 2000, Ms. M. obtained custody of the child.[2] Two days later, the Wayne County Juvenile Court dismissed Mr. K.'s petition for temporary custody "due to the fact that said child's father already retained custody of said child in Alabama."

On July 18, 2000, Mr. K. filed a petition for temporary emergency custody in Wayne County Chancery Court. He alleged that he was the biological father of the child, that he had had continuous custody of her since March 1999, that the child had been taken to California, that Ms. M. had "threatened that the petitioner would never see [the child] again," and that "the actions of the respondent, C.Y.M., [have] caused the petitioner to fear for the safety of said minor child." He asked the court to find that he was "the fit and proper person to have the permanent care and custody of said minor child and [that] a reasonable amount of child support be set, both temporary and permanent." The same day, the chancery court awarded Mr. K. "temporary emergency custody" pending further orders of the court.

Also on July 18, 2000, the Alabama trial court entered its order formally dismissing Mr. K.'s petition for custody in that state.

At some point Ms. M. seems to have reunited with her husband, J.M. On August 15, 2000, Mr. and Ms. M. together filed a *pro se* motion to dismiss in Wayne County Chancery Court. In their motion, they asked the court to dismiss Mr. K.'s petition for temporary emergency custody on "grounds that the court lacks jurisdiction of the subject matter of this controversy in that the minor child in question was not legally in the state." The motion recounted the Alabama proceedings, noting that, under Alabama law, Mr. M. was the presumed father and "no one has standing to challenge a presumed father's paternity as long as the presumed father persists in claiming paternity of the child." The motion, signed by both Mr. and Ms. M., concluded with the statement, "J.M. has not and will not disclaim the minor child, A.N.M. as his daughter." Mr. M.'s notarized affidavit, attached to the motion, stated, "A.N.M. was conceived and born during my marriage to my wife, C.M., and I do claim A. as my daughter. I have not and will not disclaim A. as my daughter." The M.s contested only subject matter jurisdiction, not personal jurisdiction, in their motion.

On August 31, 2000, Ms. M., through counsel, filed a "Response" in which she again denied that the court had subject matter jurisdiction. For the first time, Ms. M. denied that the court had personal jurisdiction over herself, her husband or the child. She also claimed that "Petitioner previously brought this cause, and has fully and fairly litigated this cause for over a year, in the courts of the state of Alabama; that the Alabama courts have determined and ruled against Petitioner; and that the determination and ruling of the Alabama courts are entitled to enforcement by this Honorable Court, resulting in the dismissal of the Petition."

On September 7, 2000, the Wayne County chancellor entered an order allowing Mr. K. to amend his petition to add an allegation, "That the defendant, J.M., has abandoned the said A.N.K.,"

---

[2] The record does not indicate the circumstances under which Ms. M. obtained custody, but we note that the original custody order, entered in March 1999, gave Ms. M. visitation during the month of July.

and the prayer for relief, "That the Plaintiff be declared to be the legitimate and biological father of A.N.K."

On September 20, 2000, the M.s filed a petition for emergency custody in Chancery Court of Union County, Arkansas. They alleged that "the child is present in this state with her parents and her sisters and it is necessary to protect the health, safety and welfare of the child. In addition, the child may have been subjected to mistreatment and abuse in her past[3] by Defendant, P.E.K., who represents himself to be the biological father, without any prior judicial finding of paternity." They further alleged that Mr. K. "recently obtained an Emergency Custody Order through the Chancery Court of Wayne County, Tennessee, which clearly has no jurisdiction over Plaintiffs or their minor daughter." They contended that Arkansas was a more convenient forum pursuant to T.C.A. § 9-19-207, and sought temporary emergency custody of the child. The Arkansas chancery court granted the M.s custody of the child the same day, "to protect the child's health, safety and welfare."

On September 28, 2000, the Wayne County Chancery Court entered an order denying the M.'s motion to dismiss and setting trial for October 27, 2000. On October 10, 2000, Ms. M. filed motions in the trial court requesting permission to file a Tenn. R. App. P. 9 interlocutory appeal with this court and for a stay in the proceedings pending appeal. The trial court denied those motions on November 1, 2000, and reset trial for November 17, 2000.

Ms. M. then filed a Tenn. R. App. P. 10 application for an extraordinary appeal with this court on November 3, 2000. This court then ordered Mr. K. to file an answer to the application, which he did. On November 16, 2000, this court issued a stay of the proceedings set for November 17, 2000, pending resolution of the application.

On November 21, 2000, this court granted the application for an extraordinary appeal, noting that the application raised serious issues concerning the trial court's jurisdiction. The appeal was limited to the following two issues:

1) The jurisdiction of the Chancery Court for Wayne County to establish paternity and/or to make an award of permanent custody; and

2) The validity of the July 18, 2000 Order for Temporary Emergency Custody.

Oral arguments were held in this matter on January 2, 2001.

---

[3]The petition was accompanied by a letter from a psychologist who had spoken to the child twice. The psychologist noted some problems that had been reported in the child's relationship with Mr. K. and offered the opinion that the child should "remain where she is until she can be better evaluated in therapy. Also she has moved between many different households and the disruption of routine and relationships [is] very detrimental to a young child. Also A. has reported a very close relationship with her sisters and moving away would be detrimental to these relationships." The psychologist also noted that she preferred to have six to ten sessions with a child before making a statement, but that time had not permitted additional sessions.

## II.

### TEMPORARY EMERGENCY CUSTODY ORDER

We begin with the validity of the temporary emergency custody order, entered in Wayne County, Tennessee on July 18, 2000. Mr. K. petitioned the court for temporary emergency custody of the child, stating that "the actions of the respondent, C.Y.M., [have] caused the petitioner to have immediate fear for the safety of [the child]" and that "recently, [Ms. M.] has taken said minor child to the State of California." The same day, the trial court awarded Mr. K. temporary emergency custody, pending further orders of the court.

Tennessee law regarding such orders states:

A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

Tenn. Code Ann. § 36-6-219(a).

Ms. M. argues that the statute requires the presence of the child in the state, and that, because the child had already been removed, the court was without jurisdiction to enter a temporary emergency custody order.

Mr. K. does not argue that the child was in the state. Instead, he would have us read the statute to place the emphasis on the "or." Thus, he argues that a court may enter an emergency custody order if the child is present and abandoned, or if it is necessary to protect the child from abuse. He refers to his petition, in which he made a general statement that Ms. M.'s actions caused him to fear for the safety of the child.

We think that Mr. K. is mistaken in his analysis of Tenn. Code Ann. § 36-6-219(a). The predicate on which the statute operates is the child's presence in this state and circumstances that demand the court's protection. Under the original Uniform Child Custody Jurisdiction Act (UCCJA), the statute clearly required the presence of the child. Section 4 of Chapter 383 of the Public Acts of 1979, which became Tenn. Code Ann. § 36-6-204, reads as follows:

(a)     A court of this state which is competent to decide child custody matters has limited jurisdiction to suspend temporarily enforcement of an existing decree and to make a temporary decree for a period not longer than sixty (60) days if the child is physically present in this state and:

(1)     The child has been abandoned; or

(2)   It is necessary in an emergency to protect the child because the child has been subjected to or is immediately threatened with serious harm to life or with serious bodily injury.

(b)   In order to obtain a permanent custody decree, the petitioning party shall file in a state which has jurisdiction as set out in § 36-6-203.

When the legislature replaced the UCCJA in 1999 with the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), a new section emerged containing the portion of Tenn. Code Ann § 36-6-219(a) we have quoted above. As can be seen, the statute has been rearranged, but there is no indication that the legislature intended to involve the courts of this state in emergencies existing in other states. We think the statute can only be read to say the courts of this state may issue a temporary emergency order if the child is abandoned in this state or the child or a sibling or parent is subjected to or threatened with abuse in this state. Otherwise the court would be powerless to correct the situation posing a threat to the child.

In addition, the allegations of Mr. K.'s petition for emergency custody do not state a claim for an emergency order. The statute requires an allegation of an emergency, in which the child, a sibling or parent, is subjected to or threatened with mistreatment or abuse. *See* Tenn. Code Ann. § 36-6-219(a). The petition only alleges that Mr. K. has an "immediate fear for the safety of the minor child." The petition then goes on to allege that the child has been taken to California by her mother. Without some factual allegation of specific threats to the child's well-being, the court did not have any basis on which to enter a temporary emergency award.

## III.

### JURISDICTION OF THE CHANCERY COURT

We turn now to the jurisdiction of the chancery court. In order to adjudicate a claim, a court must have jurisdiction over both the subject matter and the parties. *See Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). Subject matter jurisdiction relates to the cause of action itself and is conferred by the sovereign (here, the state legislature). *See id.* Whether a particular court can decide certain matters is a question of subject matter jurisdiction. *See Meighan v. U.S. Sprint Communications*, 924 S.W.2d 632 (Tenn. 1996). Personal jurisdiction relates to the court's authority over the person and can be waived by express or implied consent. *See Landers*, 872 S.W.2d at 675.

### A.  Subject Matter Jurisdiction

Ms. M. argues that the juvenile court has exclusive subject matter jurisdiction over this proceeding, thus depriving the chancery court of jurisdiction. Our statutes address the jurisdiction of the juvenile court as relates to this matter, as follows:

(a) The juvenile court has exclusive original jurisdiction of the following proceedings, which are governed by this part:

(1) Proceedings in which a child is alleged to be delinquent, unruly or dependent and neglected, or to have committed a juvenile traffic offense as defined in § 37-1-146;

(2) All cases to establish paternity of children born out of lawful wedlock; to provide for the support and education of such children, and to enforce its orders;

* * *

(c) When jurisdiction has been acquired under the provisions of this part, such jurisdiction shall continue until a person reaches the age of eighteen (18), except that the court may extend jurisdiction for the limited purposes set out in § 37-1-102(b)(4)(B) until the person reaches the age of nineteen (19). . . .

Tenn. Code Ann. § 37-1-103.

We first address Ms. M.'s first argument that, because Mr. K. brought an earlier action in the juvenile court, that court has exclusive jurisdiction over matters involving that child. As Ms. M. correctly notes, Tenn. Code Ann. § 37-1-103(c) states: "When jurisdiction has been acquired under the provisions of this part, such jurisdiction shall continue until a person reaches the age of eighteen (18). . . ." She contends that, despite the juvenile court's dismissal of Mr. K.'s petition for custody, that court retained jurisdiction over Mr. K.'s paternity action based on his allegation in that petition that he was the child's father and his prayer that "the Court make inquiry into the allegations herein set forth." We cannot agree. That petition, entitled "Petition for Temp. Custody," was dismissed by the juvenile court before the petition in this case was filed. Because the juvenile court dismissed the petition, exclusive jurisdiction over the matters alleged in it did not attach. *See Carpenter v. Carpenter*, No. 133, 1989 WL 139721 at *2 (Tenn. Ct. App. Nov. 16, 1989) (no Tenn. R. App. P. 11 application filed). Thus, Mr. K.'s dismissed petition did not confer continuing jurisdiction on the juvenile court.

We next address Ms. M.'s second argument that the language of Tenn. Code Ann. § 37-1-103(a)(2), "The juvenile court has exclusive original jurisdiction of . . . all cases to establish paternity of children born out of lawful wedlock," prevents the chancery court from assuming jurisdiction over the paternity proceedings involving this child. Mr. K. argues that another section confers jurisdiction to hear paternity cases on the chancery court as well as the juvenile court. That section, Tenn. Code Ann. § 36-2-307(a)(1), states, "The juvenile court or any trial court with general jurisdiction shall have jurisdiction of an action brought under this chapter [paternity]. . ."[4] The

---

[4]That statute by its terms applies to all counties except those "having a population not less than eight hundred

(continued...)

Wayne County Chancery Court is clearly a "trial court with general jurisdiction." *Stambaugh v. Price*, 532 S.W.2d 929, 932 (Tenn. 1976) (circuit and chancery courts are courts of general jurisdiction); *Barrow v. Barrow*, 419 S.W.2d 164, 165 (Tenn. 1967). Consequently, we must resolve the conflict between these statutes.

Tenn. Code Ann. § 36-2-307(a)(1), conferring concurrent jurisdiction with the juvenile court over paternity matters on "any trial court with general jurisdiction" was passed in 1997. Tenn. Pub. Acts 1997, ch. 477 § 1. Tenn. Code Ann. § 37-1-103, bestowing exclusive jurisdiction on the juvenile court was passed in 1970. Tenn. Pub. Acts 1970, ch. 600 § 3. "Where two statutes conflict and cannot be reconciled, the prior act will be repealed or amended by implication to the extent of the inconsistency between the two statutes." *Brewer v. Lincoln Brass Works*, 991 S.W.2d 226, 229 (Tenn. 1999). To the extent that the two statutes are inconsistent regarding where actions to establish paternity must be filed, *i.e.*, "the juvenile court has exclusive jurisdiction" as opposed to "the juvenile court or any trial court with general jurisdiction," we hold that the later statute, Tenn. Code Ann. § 36-2-307(a)(1), amended Tenn. Code Ann. § 37-1-103 such that the juvenile court no longer has exclusive jurisdiction over paternity matters. Accordingly, the Wayne County Chancery Court has concurrent jurisdiction with the juvenile court over matters involving paternity.

### B. Personal Jurisdiction

Personal jurisdiction is the power of the court to render a valid judgment against the defendant. *See* 46 Am. Jur. 2d *Judgments* § 27. It depends on reasonable notice to the defendant and a sufficient connection between the defendant and the forum state as to make it fair to require the defendant to defend in that forum. *Id.* In contrast to subject matter jurisdiction, personal jurisdiction can be conferred by express or implied consent. *Landers v. Jones*, 872 S.W.2d 674 (Tenn. 1994).

One method of obtaining jurisdiction over the person is for the defendant to make a voluntary general appearance before the court (rather than a special appearance for the purpose of contesting the court's jurisdiction). *Id.* Although the Tennessee Rules of Civil Procedure do not define a general appearance, all appearances are deemed to be general unless the contrary appears. *Akers v. Gillentine*, 231 S.W.2d 372 (Tenn. Ct. App. 1950); *Dixie Savings Stores v. Turner*, 767 S.W.2d 408 (Tenn. Ct. App. 1988). In *Landers v. Jones*, 872 S.W.2d 674 (Tenn. 1994), however, the Supreme Court limited the application of *Akers v. Gillentine* to appearances that contest the merits of the plaintiff's filing without raising the jurisdictional defense. *Landers* involved a motion for a continuance to secure more time to prepare a defense. The Court held that such a motion did not

---

[4](...continued)
twenty-five thousand (825,000) nor more than eight hundred thirty thousand (830,000) according to the 1990 federal census . . ." Tenn. Code Ann. § 36-2-307(a)(1). Paternity matters in a county of that population must be brought in juvenile court. Wayne County is not a county excepted from the statute.

constitute a general appearance, saying "waiver occurs only if there is no objection to personal jurisdiction in the first filing, either a Rule 12 motion or an answer." 872 S.W.2d at 676.

Even under the more restrictive *Landers* test the motion filed by the M.s on August 15, 2000 is a general appearance. It begins: "Comes defendants, C.Y.M. and J.M., pursuant to Tenn. R. Civ. Proc. 12.02(1) . . . ." The motion goes on to attack the subject matter jurisdiction of the court but it does not raise the personal jurisdiction defense in Rule 12.02(2).

We hold that the Chancery Court of Wayne County has general subject matter jurisdiction over paternity and child custody matters and that the court has personal jurisdiction over the M.s. What we cannot resolve on the basis of the record before us is the question of whether the court has jurisdiction to decide the custody question in this case. The UCCJEA makes the child's home state the preferred forum to decide custody matters. *See* Tenn. Code Ann. § 36-6-216(a). If this state is not the home state, jurisdiction to decide custody is limited to situations where (1) there is no home state, (2) the home state has declined to exercise jurisdiction, Tenn. Code Ann. § 36-6-216(a)(2) and (3), or (3) this state has continuing jurisdiction under Tenn. Code Ann. § 36-6-217(a)(1)(2). The question of the appropriate forum to decide the custody of this child must be resolved in the chancery court.

As to the paternity question, we have decided only that the chancery court has the power to decide such questions. The M.s are free to raise any defense to that action except the lack of personal jurisdiction. The temporary emergency custody order is reversed and the cause is remanded to the Chancery Court of Wayne County for further proceedings. Tax the costs on appeal to the appellee, P.E.K.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

-9-