IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2019

## AMBER ADA HERNANDEZ v. DAVID ALAN HERNANDEZ

**Appeal from the General Sessions Court for McNairy County
No. 7848     Van D. McMahan, Judge**

_____

### No. W2018-01388-COA-R3-CV

_____

This appeal involves a petition for modification of a permanent parenting plan. The initial permanent parenting plan order was entered by the McNairy County General Sessions Court ("trial court") in October 2006. In November 2016, the father filed a petition in the trial court, alleging that a material change in circumstance had occurred due to the mother's having been charged with aggravated statutory rape. The father concomitantly filed a petition requesting a temporary injunction granting him "emergency custody" and suspending the mother's co-parenting time. The mother filed a motion to dismiss the petitions, alleging that the trial court lacked subject matter jurisdiction because the parties and the child all resided outside of Tennessee. In December 2016, the trial court entered an "Order for Visitation," *inter alia*, modifying the father's holiday co-parenting time and directing that the mother's co-parenting time be supervised by her stepmother. Following a bench trial, the trial court granted the mother's motion to dismiss for lack of subject matter jurisdiction pursuant to Tennessee Code Annotated § 36-6-217 (2017) of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). The father has appealed. We affirm with one modification to the final judgment to clarify that with the trial court's dismissal of this action, the December 2016 temporary order was no longer of any effect.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court
Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

George Douglas Norton, Jr., Selmer, Tennessee, for the appellant, David Alan Hernandez.

Lloyd Rogers Tatum, Henderson, Tennessee, for the appellee, Amber Ada Hernandez.

# OPINION

## I. Factual and Procedural Background

The petitioner, David Alan Hernandez ("Father"), and the respondent, Amber Ada Hernandez ("Mother"), married in 2005 and together had one daughter, Z.H. ("the Child"). Although the divorce decree and permanent parenting plan order are not in the record on appeal, the parties agree that both were entered by the trial court on October 26, 2006. It is undisputed that in the permanent parenting plan, the trial court designated Mother as the primary residential parent and provided Father with co-parenting time with the Child every weekend from 6:00 p.m. on Friday through 6:00 p.m. on Sunday. During the April 2018 trial in the instant action, Father testified that he had relocated to North Carolina four years prior to trial, or at some point in 2014.

During trial, Mother testified that she and the Child remained in Tennessee through 2014. It is undisputed that in April 2014, Mother became the focus of a criminal investigation involving sexual contact with a minor in McNairy County. According to Mother's testimony, she and the Child relocated in 2014 first to Nashville for approximately one year and then to Athens, Alabama, at some point in 2015, where they resided at the time of trial with Mother's father; stepmother; siblings; current husband; and a daughter, L.C., from Mother's current relationship.

Father initiated the instant action by filing two petitions in the trial court on November 17, 2016, averring in both petitions that Mother had been arrested on various charges related to the criminal investigation. In the first petition, filed as a "Petition for Temporary Injunction" pursuant to Tennessee Rule of Civil Procedure 65.07, Father sought, *inter alia*, to have the trial court suspend Mother's visitation pending further order and grant to Father "emergency custody" of the Child. In the second petition, Father asserted that a material change in circumstance had occurred since entry of the permanent parenting plan. He requested that the trial court modify the permanent parenting plan by designating Father as the primary residential parent and allowing Mother to have only supervised visitation with the Child.

Also on November 17, 2016, Mother filed a motion to dismiss both petitions and an answer to the petition for temporary injunction. In her motion to dismiss, Mother asserted that the trial court lacked subject matter jurisdiction and was an improper venue pursuant to applicable provisions of the UCCJEA. In her answer, Mother acknowledged that she had been charged in the criminal case but stated that she was currently free on bond and that she intended to fight the charges. She denied all other substantive allegations of Father's petitions. In addition, Mother averred that while the Child had

been in the care of Father and the paternal grandmother, the Child had been around an unrelated individual who was listed on the Tennessee Sexual Offender Registry.

Following a non-evidentiary hearing, the trial court entered an "Order for Visitation" on December 5, 2016. The court granted to Father increased co-parenting time with the Child over the Thanksgiving and Christmas holidays and set forth the manner in which the parties were to exchange the Child. The court ordered that Mother's co-parenting time with the Child be supervised at all times by Mother's stepmother. The court also ordered that the paternal grandmother must not be around the Child unsupervised.

On December 28, 2016, Mother filed an answer to Father's modification petition, as well as a counter-petition for modification of the permanent parenting plan. In these pleadings, Mother agreed that a material change in circumstance had occurred since entry of the permanent parenting plan. She asserted, *inter alia,* that a "new parenting plan [was] necessary to [e]ffect the goal of maximizing parenting time with each parent considering the distance in which the parties live from each other." Mother attached a proposed permanent parenting plan that would have provided her with 305 residential co-parenting days and Father with 60 co-parenting days per year.

Father responded by filing an answer in which he asserted that Mother's counter-petition should be dismissed for failure to state a claim upon which relief could be granted. Upon Father's subsequent motion to set temporary visitation, the trial court entered an agreed order on June 12, 2017, providing co-parenting time with the Child to Father for most of June of that year.

On August 21, 2017, Mother entered a guilty plea to aggravated statutory rape in the McNairy County Circuit Court. As a result, Mother's name was entered as a nonviolent offender on both the Tennessee and Alabama Sexual Offender Registries. The parties participated in mediation in November 2017, but a report filed by the mediator reflects that the parties did not reach an agreement. Upon Mother's motion, the trial court entered an order on January 10, 2018, directing both parties to "submit to a hair follicle or nail bed drug test." The results of Mother's drug test are in the record and reflect negative results for all substances screened.

Over the course of two days, on April 10 and May 2, 2018, the trial court conducted a bench trial concerning the competing modification petitions and motions to dismiss. In addition to other witnesses, the court heard testimony from the parties and Mother's current husband. Upon Mother's motion, the court also considered testimony from the Child, who had turned twelve years of age in the interim between the two days of trial. At the close of trial, the court took the matter under advisement.

On June 13, 2018, the trial court sent an email message to counsel for both parties, setting forth the court's findings of fact and conclusions of law. The trial court ultimately determined that Father's petition and Mother's counter-petition must be dismissed because the court lacked subject matter jurisdiction pursuant to the UCCJEA. The trial court entered its order memorializing this ruling on June 29, 2018. On July 27, 2018, Father timely appealed the order.

On February 1, 2019, this Court entered an order determining that it lacked subject matter jurisdiction over Father's appeal because the order appealed from did not comply with Tennessee Rule of Civil Procedure 58. This Court noted that the order (1) was not signed by Father's counsel and included no certificate of service indicating that Father had been served and (2) did not have the findings of fact and conclusions of law attached as indicated in the order. Father subsequently obtained entry of a final judgment from the trial court in compliance with Rule 58. On February 6, 2019, the trial court entered a corrected final judgment granting Mother's motion to dismiss for lack of subject matter jurisdiction and incorporating and attaching the court's email with findings of fact and conclusions of law as a memorandum opinion. This appeal followed.

## II. Issue Presented

Father presents one issue on appeal, which we have restated as follows:

Whether the trial court erred by granting Mother's motion to dismiss for lack of subject matter jurisdiction and by declining to specify a time period for Father to obtain an order from an Alabama court.

## III. Standard of Review

This case requires application and construction of the UCCJEA. *See* Tenn. Code Ann. §§ 36-6-201, *et seq.* (2017). "Whether a court has jurisdiction under the UCCJEA is a question of law, subject to de novo review with no presumption of correctness." *In re Arabella L.*, No. M2017-01069-COA-R3-JV, 2017 WL 5713939, at *1 (Tenn. Ct. App. Nov. 28, 2017) (citing *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006)). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). Our Supreme Court has summarized the principles involved in statutory construction as follows:

4

When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).

To the extent that we need also review the factual findings of the trial court, we presume those findings to be correct and will not overturn them unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Morrison v. Allen*, 338 S.W.3d 417, 425-26 (Tenn. 2011). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison* 338 S.W.3d at 426; *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

The trial court based its dismissal of this action on a lack of subject matter jurisdiction. "Subject matter jurisdiction implicates a court's power to adjudicate a particular case or controversy." *McQuade v. McQuade*, No. M2010-00069-COA-R3-CV, 2010 WL 4940386, at *4 (Tenn. Ct. App. Nov. 30, 2010) (citing *Osborn v. Marr*, 127

5

S.W.3d 737, 739 (Tenn. 2004)). A court must have subject matter jurisdiction to "enter a valid, enforceable order." *McQuade*, 2010 WL 4940386, at *4 (citing *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955)). Subject matter jurisdiction derives "from the Tennessee Constitution or from legislative acts," such as the UCCJEA controlling here. *See Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006). Subject matter jurisdiction cannot be conferred on a trial court "by appearance, plea, consent, silence, or waiver." *Id.* (citing *State ex rel. Dep't of Soc. Servs. v. Wright*, 736 S.W.2d 84, 85 n.2 (Tenn. 1987); *Team Design v. Gottlieb*, 104 S.W.3d 512, 527 (Tenn. Ct. App. 2002)). Furthermore, "subject matter jurisdiction may be raised at any time by the parties or by the appellate court, *sua sponte* on appeal." *McQuade*, 2010 WL 4940386, at *4 (citing *Cty. of Shelby v. City of Memphis*, 365 S.W.2d 291 (Tenn. 1963)).

## IV. Subject Matter Jurisdiction under the UCCJEA

In contending that the trial court erred by dismissing this action for lack of subject matter jurisdiction, Father presents a three-part argument. First, Father asserts that Tennessee was still the state with exclusive, continuing jurisdiction to modify the permanent parenting plan because Mother and the Child allegedly had not resided in Alabama for six consecutive months at the time of the modification petition's filing. Second, Father contends that if this Court were to determine that Mother and the Child had been residing in Alabama for at least the minimum statutory period of six months, Mother's conduct in leaving Tennessee was "unjustifiable" and should not enable her to "avoid" the jurisdiction of a Tennessee court in this child custody matter. Finally, Father argues that if even if the trial court lost exclusive, continuing jurisdiction, the trial court exercised temporary emergency jurisdiction, pursuant to Tennessee Code Annotated § 36-6-219, when it entered the December 2016 "Order for Visitation." Father thereby posits that the trial court erred by not specifying a timeframe for Father to obtain an order from an Alabama court before the "emergency" order would expire.

Upon careful review, we conclude that the trial court properly found that it no longer had exclusive, continuing jurisdiction over this action at the time that Father filed his modification petition. Moreover, we determine that because Tennessee was no longer the home state of the Child or the residence of any party to this action and because the Child was not present in Tennessee at the time of the December 2016 order's entry, that order did not constitute an "emergency" order under the UCCJEA, yielding the order of no further effect once the trial court dismissed Father's modification petition.

The UCCJEA, codified at Tennessee Code Annotated §§ 36-6-201, *et seq.,* governs jurisdictional custody issues that concern multiple states. *See Iman v. Iman*, No. M2012-02388-COA-R3-CV, 2013 WL 7343928, at *3 (Tenn. Ct. App. Nov. 19, 2013) (citing *Staats*, 206 S.W.3d at 544-45) ("The UCCJEA is a detailed jurisdictional Act that

has been adopted, in one form or another, in all fifty states."). The purpose of enacting the UCCJEA was to establish national standards for jurisdiction regarding initial custody determinations, to specify the circumstances under which a state can modify another state's child custody determination, to establish procedures for enforcement of both initial custody orders and modification orders, and to prevent contradictory orders by the courts of different states. *See* Tenn. Code Ann. § 36-6-202 (2017); *Iman*, 2013 WL 7343928, at *3 (citing *Staats*, 206 S.W.3d at 544-45). Importantly, an official comment to Tennessee Code Annotated § 36-6-217 clarifies that whether the trial court has subject matter jurisdiction over a custody modification action is determined at the time that the modification proceeding is commenced. *See Busler v. Lee*, No. M2011-01893-COA-R3-CV, 2012 WL 1799027, at *2 (Tenn. Ct. App. May 17, 2012) (citing Tenn. Code Ann. § 36-6-217, cmt. 2).

Tennessee Code Annotated § 36-6-217(a) provides:

(a)     Except as otherwise provided in § 36-6-219, a court of this state which has made a child-custody determination consistent with this part has exclusive, continuing jurisdiction over the determination until:

    (1)     A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

    (2)     A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

(b)     A court of this state which has made a child-custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under § 36-6-216.

A trial court's exclusive, continuing jurisdiction is lost when the conditions in either Tennessee Code Annotated § 36-6-217(a)(1) or (2) occur. *See In re Arabella*, 2017 WL 5713939, at *1-2; *Busler*, 2012 WL 1799027, at *2 ("A court that has made a child custody determination consistent with the act retains exclusive, continuing jurisdiction until one of two statutory triggers occurs." (citing Tenn. Code Ann. § 36-6-217(a))).

Tennessee Code Annotated § 36-6-216 (2017) sets forth the requirements for an initial custody determination as follows:

(a)    Except as otherwise provided in § 36-6-219, a court of this state has jurisdiction to make an initial child custody determination only if:

    (1)    This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

    (2)    A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under §§ 36-6-221 or 36-6-222, and:

        (A)    The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

        (B)    Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

    (3)    All courts having jurisdiction under subdivision (a)(1) or (a)(2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under §§ 36-6-221 or 36-6-222; or

    (4)    No court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3).

(b)    Subsection (a) is the exclusive jurisdictional basis for making a child-custody determination by a court of this state.

(c)     Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

Tennessee Code Annotated § 36-6-205(7) (2017) defines a child's "home state" as

the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months of age, "home state" means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period[.]

In this case, the trial court acquired exclusive, continuing jurisdiction over the initial child custody determination in 2006 because Tennessee was undisputedly the Child's home state when the divorce action was commenced. *See* Tenn. Code Ann. §§ 36-6-205(7), 36-6-216(a)(1). However, the action at issue here was commenced when Father filed the modification petition, rendering November 17, 2016, the relevant date for a determination of whether the trial court retained exclusive, continuing subject matter jurisdiction over a modification action. *See* Tenn. Code Ann. § 36-6-205(5) (2017) (defining "commencement" for purposes of the UCCJEA as "the filing of the first pleading in a proceeding"); *Busler*, 2012 WL 1799027, at *2. For purposes of determining the Child's home state, the six-month period prior to the commencement of this proceeding began on May 17, 2016.

At the outset of our review of the trial court's final judgment, we note that neither party has raised an issue on appeal objecting to the court's email communication to counsel for both parties functioning as a memorandum opinion incorporated by reference into the final judgment. The practice is unusual, however, and we will take an opportunity here to analyze its effect. We are mindful of Tennessee Rule of Civil Procedure 52.01, which states in pertinent part that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." It is well established that this requirement may be satisfied by incorporating a memorandum opinion into a final judgment by reference. *See, e.g., Little v. Paduch*, 912 S.W.2d 170, 172 (Tenn. Ct. App. 1995) (reviewing the memorandum opinion issued from the bench and incorporated by reference into the final judgment to better understand the judgment); *Nashville, Chattanooga & St. Louis Ry. v. Commercial Nursery Co.*, 8 Tenn. App. 16, 18 (Tenn. Ct. App. 1928) (noting that the trial court was correct in its holding, as evidenced by the "memo. opinion" incorporated into the judgment). In the instant cause, the trial court's email ruling was incorporated by reference into the court's final judgment and set forth both findings of fact and conclusions of law in compliance with Tennessee Rule of

Civil Procedure 52.01. Under the specific facts of this case, we recognize the trial court's email, sent simultaneously to counsel for both parties, as a memorandum opinion that was appropriately incorporated into the final judgment.

The trial court in its memorandum opinion found that although it had properly exercised subject matter jurisdiction to enter the initial custody determination in October 2006, the conditions provided in Tennessee Code Annotated § 36-6-217(a)(2) for the court to find that it had lost exclusive, continuing jurisdiction had subsequently occurred by the time that Father filed the modification petition on November 17, 2016. The trial court stated in its memorandum opinion in pertinent part:

> Upon [Mother's] motion to dismiss for lack of subject matter jurisdiction the court finds as follows. Neither the parents nor child currently reside in Tennessee. Tennessee is no longer the home state of the minor child. This court no longer has continuing jurisdiction of this case under T.C.A. Section 36-6-217 (a), because neither the child, nor child's parents, reside in Tennessee. Moreover, they have not resided in Tennessee for more than six (6) months next [preceding] the filing date of this petition. The petition was filed on November 17, 2016. However, [Mother] testified that she moved to Alabama with the minor child in 2015 ([the court] reviewed the audio tape of the hearing and [the court's] notes to confirm when [Mother] and child moved to Alabama and [Mother] testified she did so in 2015). [Father] testified that he moved to North Carolina more than six (6) months prior to the petition being filed as well.

> The court also lacks jurisdiction to modify its prior decree under T.C.A. Section 36-6-217 (b), because it no longer has jurisdiction under T.C.A. Section 36-6-216 (initial custody determination). Alabama and not Tennessee appears to have such jurisdiction. Under Section 216 the court can make an initial custody determination only if either the child or a parent is residing in Tennessee on the date of the petition being filed or has resided in Tennessee for six (6) months preceding the filing of the petition. As mentioned, the petition was filed on November 17, 2016 and both parents and the child did not reside in Tennessee at any time during the six (6) months prior thereto. There is also no evidence that a court of another state, Alabama or North Carolina, has declined jurisdiction to hear this case. Therefore, [Mother's] motion to dismiss for lack of subject matter jurisdiction is granted.

Upon a thorough review of the testimony and exhibits presented during trial, we agree with the trial court that the evidence preponderates in favor of the court's finding

10

that Tennessee was no longer the home state of either parent or of the Child on November 17, 2016. Father acknowledged during trial that he had relocated to North Carolina four years prior to trial. He argues, however, that the Child's testimony indicated that she was still attending school and residing in Nashville, Tennessee, with Mother at the end of May 2016, within six months of the modification petition's filing. The Child testified that she began attending school in Alabama in the fifth grade and that she "spent the 4th grade" in Nashville. At the time of the Child's testimony at trial in May 2018, she stated that she was currently in the sixth grade. According to Father, this would mean that the Child was still residing in Nashville in May 2016. However, the Child also testified that she and Mother had relocated to Alabama "two to three years" prior to trial and that they lived in Nashville for "[a] short period before [they] moved to Alabama." The Child did not clarify when her fourth-grade year ended or whether she was in Nashville for the end of the school year. When questioned regarding what grade the Child had completed in Nashville, Mother stated the third or fourth grade.

In response to Father's argument, Mother asserts that the evidence preponderates in favor of the trial court's finding that she and the Child had resided in Alabama for at least six months prior to the filing of the petition. The trial court clearly credited Mother's testimony that she and the Child had relocated to Alabama in 2015 and had been living there ever since, which would indicate that Mother and the Child had resided in Alabama for all of 2016. We emphasize that the trial court's findings regarding witness credibility are afforded great deference on appeal. *See Morrison* 338 S.W.3d at 426; *Jones*, 92 S.W.3d at 838. Father also argues that Mother's Alabama residency should be called into question because her driver's license is listed as a Tennessee license on an August 2017 Tennessee Sexual Offender Registry search presented as an exhibit at trial. However, this same search reflects Mother's status as "inactive – moved to another state" and includes Mother's Alabama home address. The evidence does not preponderate against the trial court's finding that Tennessee was no longer the home state of either parent or of the Child at the commencement of this action because Father, Mother, and the Child had all resided outside the state for at least six months prior to the filing of the modification petition. Therefore, the trial court properly found that it had lost exclusive, continuing jurisdiction over this matter.

Furthermore, pursuant to Tennessee Code Annotated § 36-6-217(b), the trial court no longer maintained subject matter jurisdiction to modify its own initial custody determination. Having made the initial determination in October 2006, the trial court could modify that determination only if it had jurisdiction "to make an initial determination under § 36-6-216" at the time of the modification petition's filing. *See* Tenn. Code Ann. § 36-6-217(b). The trial court no longer had subject matter jurisdiction to make an initial custody determination consistent with Tennessee Code Annotated § 36-6-216 because Tennessee was no longer the home state of the Child when the

11

modification proceeding commenced, and the Child's current home state of Alabama had not declined to exercise jurisdiction. *See* Tenn. Code Ann. § 36-6-216. We therefore conclude that the trial court did not err in determining that it lacked subject matter jurisdiction to modify the permanent parenting plan pursuant to Tennessee Code Annotated § 36-6-217(b).

Father next argues that Mother committed "unjustifiable conduct" by relocating from Tennessee to Alabama in an effort to "avoid" the jurisdiction of the trial court. In relevant part, Tennessee Code Annotated § 36-6-223(a) (2017) provides that unless certain conditions are met, and "[e]xcept as otherwise provided in § 36-6-219, or by other law of this state, if a court of this state has jurisdiction under this part because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction[.]" We note that this statutory section is invoked when the Tennessee court has jurisdiction due to a party's unjustifiable conduct, which would not be the situation in the present action even had Mother caused the change in jurisdiction through such unjustifiable conduct.

In support of his contention concerning unjustifiable conduct, Father cites to Mother's testimony that her 2015 move to Alabama occurred after she was initially questioned during the criminal investigation in April 2014 but had not yet been charged. Mother asserts that Father's characterization of this testimony as cause-effect is inaccurate, and we agree. Mother's testimony supports a determination that she was providing a timeline rather than a rationale for her relocation. The record demonstrates that Mother appeared in Tennessee for purposes of defending her criminal court charges, as well as answering Father's petitions in the instant matter. No evidence was presented in this action to indicate that Mother was "avoid[ing]" the jurisdiction of Tennessee courts. Father's argument in this regard is without merit.

Finally, Father contends that the trial court properly exercised temporary emergency jurisdiction under the UCCJEA when it entered the December 2016 "Order for Visitation." According to Father, the December 2016 order remains in effect, and the trial court erred by failing to specify a period of time that it considered sufficient for Father to obtain an order from an Alabama court. We disagree. Tennessee Code Annotated § 36-6-219 (2017) provides in relevant part:

(a)     A court of this state has temporary emergency jurisdiction <u>if the child is present in this state</u> and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

12

    \* \* \*

    (c)    If there is a previous child custody determination that is entitled to be enforced under this part, or a child-custody proceeding has been commenced in a court of a state having jurisdiction under §§ 36-6-216—36-6-218, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under §§ 36-6-216—36-6-218. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

(Emphasis added.)  As this Court has explained:

The predicate on which the statute operates is the child's presence in this state and circumstances that demand the court's protection.  Under the original Uniform Child Custody Jurisdiction Act (UCCJA), the statute clearly required the presence of the child.

    \* \* \*

When the legislature replaced the UCCJA in 1999 with the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), a new section emerged containing the portion of Tenn. Code Ann § 36-6-219(a) we have quoted above. . . . [T]he statute has been rearranged, but there is no indication that the legislature intended to involve the courts of this state in emergencies existing in other states.  We think the statute can only be read to say the courts of this state may issue a temporary emergency order if the child is abandoned in this state or the child or a sibling or parent is subjected to or threatened with abuse *in this state*.  Otherwise the court would be powerless to correct the situation posing a threat to the child.

*P.E.K. v. J.M.*, 52 S.W.3d 653, 657-58 (Tenn. Ct. App. 2001).

As to the threat of mistreatment or abuse required for a Tennessee court to invoke temporary emergency jurisdiction over a child who is present in Tennessee, our Supreme Court has held that Tennessee Code Annotated § 36-6-219(a) "contemplates a threat of immediate mistreatment or abuse to the child." *Button v. Waite*, 208 S.W.3d 366, 370 (Tenn. 2006).  The threat contemplated to the child must be specifically alleged. *P.E.K.*, 52 S.W.3d at 658 ("Without some factual allegation of specific threats to the child's well-

being, the court did not have any basis on which to enter a temporary emergency award.").

In the case at bar, the trial court, prior to hearing evidence concerning Mother's motion to dismiss for lack of subject matter jurisdiction, entered the December 2016 order directing Father's Thanksgiving and Christmas co-parenting time, setting forth the manner in which the parties would exchange the Child, enjoining Mother from being around the Child without Mother's stepmother present, and enjoining Father from allowing the paternal grandmother to be around the Child unsupervised. The trial court did not at any point in the order invoke temporary emergency jurisdiction under the UCCJEA and did not reference the statute at all. Moreover, the trial court did not have the authority to invoke temporary emergency jurisdiction concerning the Child because the Child was not present in Tennessee and had not been present in Tennessee for several months. *See* Tenn. Code Ann. § 36-6-219(a); *P.E.K.*, 52 S.W.3d at 657-58.

Additionally, Father's Tennessee Rule of Civil Procedure 65.07 "Petition for Temporary Injunction," on which the December 2016 order was based, alleged solely that Mother had been "charged and recently turned herself into the jail" for the charges she then faced. Although Father averred generally in the petition that "[i]f immediate action is not taken to enjoin the Mother the minor child will suffer irreparable harm," Father did not claim a specific, immediate threat of abuse or mistreatment to the Child. As to any threat to the Child's well-being alleged in the simultaneously filed modification petition, Father averred only that he "fear[ed] for the safety of the minor child if Mother continues to have custody." We conclude that the trial court did not assume temporary emergency jurisdiction over the Child through its December 2016 order. Ergo, the court did not err by failing to specify a time period by which Father would have had to obtain an order from a court with subject matter jurisdiction.

Having determined that the trial court did not maintain subject matter jurisdiction over this modification proceeding and that the trial court properly did not assume temporary emergency jurisdiction concerning the Child, we address the question of the effect of the December 2016 visitation order. The trial court did not reference the status of the December 2016 order in its final judgment. Tennessee Code Annotated § 36-6-217(a)(2) provides that a Tennessee court that previously has made a child custody determination "has exclusive, continuing jurisdiction over the determination until . . . [a] court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state." In this instance, the trial court had entered the permanent parenting plan order in October 2006 and at the time of the December 2016 visitation order's entry, had not yet heard evidence concerning the residence of the parties and the home state of the Child. Additionally, no

14

court of another state had heard such evidence and either exercised or declined to exercise subject matter jurisdiction.

We recognize the trial court's December 2016 order as interlocutory prior to the court's determination concerning exclusive, continuing jurisdiction. Although Tennessee's UCCJEA does not expressly provide for interlocutory orders, the UCCJEA does maintain the jurisdiction of the Tennessee court that entered the initial custody determination until "[a] court of this state or a court of another state determines" that the Tennessee court has lost exclusive, continuing jurisdiction. *See* Tenn. Code Ann. § 36-6-217(a)(2).[1]

For example, in *Lee v. Lee*, No. W2003-01053-COA-R3-CV, 2004 WL 3021107, at *7-8 (Tenn. Ct. App. Mar. 22, 2004), the trial court reserved judgment on the question of subject matter jurisdiction pending the filing of a court-ordered psychological evaluation undergone by the father and a court-ordered report from the guardian *ad litem*. Following the entry of several interlocutory orders, the *Lee* trial court ultimately found that it did not have subject matter jurisdiction under the UCCJEA, and this Court affirmed that determination. *Id.* at 8. Regarding an interlocutory visitation order entered by the trial court, this Court, citing Tennessee Code Annotated § 36-6-217(a)(2), determined in pertinent part:

> While that order [suspending the father's visitation with the child] was in effect at the time of the dismissal on jurisdictional grounds, it was no longer in effect after the dismissal, and the original custody order, including the visitation arrangements therein, remains the controlling order on those matters, unless or until it is modified by a court with jurisdiction.

*Id.* The *Lee* Court further explained:

> The visitation suspension order was, in effect, a temporary restraining order or temporary injunction pursuant to Tenn. R. Civ. P. 65. Like any other injunction entered for the pendency of the litigation or any other interlocutory order, it was extinguished upon the dismissal of the action.

*Id.* (footnote omitted).

---

[1] We note, however, that Tennessee Code Annotated § 36-6-210 (2017) provides: "If a question of existence or exercise of jurisdiction under this part is raised in a child-custody proceeding, the question, upon request of a party, must be given priority on the calendar and handled expeditiously."

15

In the case at bar, we conclude that the December 2016 order held no effect upon entry of the trial court's final order determining that it lacked exclusive, continuing jurisdiction. We emphasize, however, that the original permanent parenting plan order is a valid initial child custody determination that remains in effect until and unless a court with jurisdiction modifies that determination. *See* Tenn. Code Ann. § 36-6-209(a) (2017) (setting forth the binding nature of a state court's "child-custody determination made by a court of this state that had jurisdiction" at the time that the determination was made); *see, e.g., Lee*, 2004 WL 3021107, at *8.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's judgment dismissing this action for lack of subject matter jurisdiction. We modify the judgment to clarify that the December 2016 "Order for Visitation" was no longer of any effect upon the trial court's entry of the motion to dismiss. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the judgment and collection of costs assessed below. The costs on appeal are assessed against the appellant, David Alan Hernandez.

_____
THOMAS R. FRIERSON, II, JUDGE